**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

**WALLIS KANE, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**vs.**

**DAVOL, INC., and C.R. BARD, INC.,**

**Defendants.**

**Case No. 07-0575-CV-W-FJG**

**JURY TRIAL DEMAND**

## CLASS ACTION COMPLAINT

COMES NOW plaintiff Wallis Kane, by and through her attorneys of record, brings this action individually and on behalf of all others similarly situated, and hereby alleges the following:

## NATURE OF THE ACTION

1. Plaintiff bring this cause of action on behalf of herself and the Class defined herein against C.R. Bard, Inc. (hereinafter "Bard") and its wholly owned subsidiary, Davol, Inc., (hereinafter "Davol"), for their sale and distribution of the defective Composix Kugel Mesh Patch. The Defendants' defective product has been surgically implanted into the bodies of the Plaintiff and the Class Members. The patch presents, and will continue to present, a substantial risk of injury or death to the Plaintiff and the Class Members. As a result, Plaintiff and the Class have been injured and will need continued and ongoing medical monitoring.

## PARTIES

2. Plaintiff Wallis Kane ("Wallis") is an individual citizen and resident of the State of Missouri. During the relevant time period, Wallis had hernia repair surgery which included

the implantation of a Composix Kugel Mesh Patch into her body. That patch remains in her body to this day.

3. Defendant Davol is and was a wholly owned subsidiary of Bard, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. At all times relevant, Davol was a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island. Davol designed, manufactured, tested, analyzed, distributed, recommended, merchandise, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the State of Missouri.

4. Defendant Bard is a New Jersey corporation with its principal office and place of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, and at all times relevant designed, manufactured, tested, analyzed, distributed, recommended, merchandise, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the State of Missouri.

5. This Court has diversity jurisdiction over the Class pursuant to U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005. Plaintiff and each member of the putative Class have suffered aggregate damages exceeding five million dollars ($5,000,000.00), exclusive of interest and costs. There are members of the Class who are citizens of a different State than Defendants.

6. Venue in this juridical district is proper pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides in this judicial district and a substantial part of the events giving rise to the claims at issue arose in this district.

## GENERAL ALLEGATIONS

7. This class action involves the Composix Kugel Mesh Patch manufactured by Defendants between 2001 and March 2006. These Composix Kugel Mesh Patches were sold by Defendants for implantation in patients in the course of hernia repair surgery.

8. A hernia occurs when the stomach muscles are too weak to contain the intestines, and as a result, a rupture occurs in the muscle wall which allows the intestines to protrude. The Composix Kugel Mesh Patch was designed to treat ventral hernias caused by the thinning or stretching of scar tissue that forms after surgery.

9. The Kugel Mesh line of products was first manufactured by Surgical Sense, Inc., starting in or around 1996. In January of 2000, Bard acquired the Kugel line of hernia repair products from Surgical Sense, Inc. Shortly thereafter, in 2001, Bard introduced the Composix Kugel Mesh Patch through its subsidiary, Davol.

10. The Composix Kugel Mesh Patch, invented by Dr. Robert D. Kugel, is a polypropylene mesh prosthetic device developed to repair ventral hernias, or hernias of the abdominal region. The Composix Kugel Mesh Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision of mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds the mesh.

11. Due to defects in the design and manufacturing of the Composix Kugel Mesh Patch, the "memory recoil ring" that opens the patch can break under the stress of placement of

the product in the intra-abdominal space. Once the memory recoil ring has broken, it can later come loose and cause serious injuries as it travels through the body. These injuries include: intestinal perforations; ring migration through the abdominal wall; abscesses; bowel obstruction and sepsis; and chronic intestinal fistulae (abnormal connections or passageways between the intestines and other organs).

12. The Composix Kugel Mesh Patches present and constitute an unreasonable risk of danger and injury in the following respects:

a. The memory recoil ring of the Composix Kugel Mesh Patch is likely to malfunction after being implanted;

b. The Composix Kugel Mesh Patch was not properly manufactured;

c. The Composix Kugel Mesh Patch was defectively designed;

d. The Composix Kugel Mesh Patch did not perform as safely as an ordinary consumer/patient would expect;

e. The Composix Kugel Mesh Patch was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

f. Such further and additional defects as discovery and the evidence reveal.

13. As a result of this dangerous and defective condition, and the numerous serious injuries that have resulted, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix Kugel Mesh Patch. A Class 1 recall is the highest level of recall available to the FDA. It is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

14. On December 22, 2005 and January 13, 2006, Davol and Bard announced the recall of the Composix Kugel Mesh X-Large Patch. Subsequently, in March of 2006, the Defendants announced the recall of the Composix Kugel Mesh Large Patch as well.

15. Under these FDA recalls, the following products were subject to recall:

| | | | |
|---|---|---|---|
| PC#0010206 | Bard Composix Kugel | Extra Large Oval | 8.7" x 10.7" |
| PC#0010207 | Bard Composix Kugel | Extra Large Oval | 10.8" x 13.7" |
| PC#0010208 | Bard Composix Kugel | Extra Large Oval | 7.7" x 9.7" |
| PC#0010209 | Bard Composix Kugel | Large Oval | 6.3" x 12.3" |
| PC#0010202 | Bard Composix Kugel | Large Oval | 5.4" x 7" |
| PC#0010204 | Bard Composix Kugel | Large Circle | 4.5" |

16. The products that are affected by the recall were distributed to customers and implanted in patients worldwide. As of March 2006, roughly 75,000 Composix Kugel Mesh Patches have been sold. Upon information and belief, the vast majority of the patches which have been implanted are currently still inside patients residing in the United States.

17. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' users.

18. Defendants' Composix Kugel Mesh Patches are uniformly defective because they possess the same potential for breakage or malfunction of the memory recoil ring and, as a result, are subject to risk of resulting injury.

19. Defendants did not timely apprise the public and physicians of the defect in their Composix Kugel Mesh Patches, despite Defendants' concealment of a known defect from Plaintiff and Class members equitably tolls any applicable statutes of limitation. No member of the Class could have discovered the existence of the defect in the implanted Composix Kugel

Mesh Patches until at least December 27, 2005, when Defendants first began to provide notice of the recall.

20. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of the Plaintiff and the members of the Class.

21. As a direct and proximate cause of Defendants' conduct and the recalled Composix Kugel Mesh Patches, Plaintiffs and the Class have suffered injuries and will require continual medical monitoring and care. Accordingly, Plaintiff and the Class will incur future medical costs related to the recalled Composix Kugel Mesh Patches.

**NAMED PLAINTIFF'S EXPERIENCE**

22. Wallis underwent a hernia repair surgical procedure on September 17, 2004 at University of Kansas Hospital located in Kansas City, Kansas, and during the course thereof, Wallis' physician implanted a Composix Kugel Mesh Patch into her body.

23. The Composix Kugel Mesh Patches implanted in Wallis was designed, manufactured, sold and distributed by Defendants, and were intended to be used by surgeons for hernia repair surgeries. Defendants represented this Composix Kugel Mesh Patches to be appropriate and suitable products for such purposes.

24. The Composix Kugel Mesh Patch in Wallis' body presents a serious ongoing health risk due to its defective design and/or manufacture.

25. As a direct and proximate result of Defendants' defective design, manufacture, function and/or inadequate warnings regarding the Composix Kugel Mesh Patch, Wallis has

sustained, and will continue to sustain, injuries and damages, including, but not limited to, medical monitoring by means of a CT scan every three months.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this class action on behalf of herself and on behalf of all other similarly situated, as members of a proposed plaintiff class (the "Class") defined as:

> All citizens, residents or domiciliaries of Missouri who have had a recalled Composix Kugel Mesh Patch implanted into their person, which has not been explanted, and who have not developed a manifest and diagnosed injury as a result of the product of a degree or severity that would permit individual personal injury lawsuits to be commenced, but will require medical monitoring.

This action is brought and may properly be maintained as a class action pursuant to the provisions of Rule 23(a)(1)-(4), and 23(b)(1) – 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

27. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically, excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

28. The Class is so numerous that the individual joinder of all its members is impracticable. While the exact number and identification of Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery of Defendants.

On information and belief, Defendants have sold roughly 75,000 defective units, as such, the Class includes thousands of class members.

29. Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

a. Whether there are design and/or manufacturing defects in the Composix Kugel Mesh Patch;

b. Whether Defendants failed to follow U.S. Food & Drug Administration ("FDA") good manufacturing practices, failed to properly investigate manifestations of the Composix Kugel Mesh Patch over the past several years, failed to adequately document reports of the defect, and failed to exercise adequate quality control;

c. Whether Defendants' conduct in designing, manufacturing, marketing and monitoring the Composix Kugel Mesh Patch fell below the duty of care owed by Defendants to Plaintiff, Plaintiff's participants, and Class members;

d. Whether Defendants intentionally, knowingly, carelessly, recklessly, or negligently concealed information regarding the existence of a defect in the Composix Kugel Mesh Patch from the FDA, physicians, Plaintiffs' members, and the members of the Class;

e. Whether Composix Kugel Mesh Patch listed in the proposed Class definition share a common and inherent design defect that causes them to break, creating a risk of injury or death to patients in whom they were implanted;

f. Whether Defendants negligently, recklessly, or intentionally misrepresented the quality and usefulness of the Composix Kugel Mesh Patch;

g. Whether Defendants are liable for selling a dangerously defective product;

h. Whether the Class had been injured by virtue to the Defendants' deceptive business practices and conduct;

i. Whether the Class is entitled to injunctive and other equitable relief including restitution and disgorgement and, if so, the nature of such relief;

j. Whether the class is entitled to medical monitoring and treatment, at Defendants' expense; and

k. Whether Defendants are liable for punitive or exemplary damages, and if so, the amount necessary and appropriate to Defendants for their conduct, to deter others, and to fulfill the other policies and purposes of punitive and exemplary damages.

30. Plaintiff's claims are typical of the members of the Class. Plaintiffs and the members of the Class have suffered similar injury and are facing further damages arising out of Defendants' common course of conduct, as alleged herein. The economic losses of each Class member were and are caused directly by Defendants' conduct, as alleged herein. Plaintiffs and the members of the Class must prove the same facts in order to establish the same claims, as described herein, which apply to all Class members.

31. Plaintiff is an adequate representative of the Class because she has been billed for the Composix Kugel Mesh Patch and medical costs relating to such device, and will continue to incur related medical expenses, and her interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiff has retained experienced and competent counsel, and together Plaintiff and counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of the Class members will fairly and adequately be protected by Plaintiff and her counsel.

32. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of

thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse, and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Composix Kugel Mesh Patch claims. By contrast, the Rule 23 class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

33. The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by thousands of individual Class members would create a risk of inconsistent or varying adjudications with respect to the individual Class members, thus establishing incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would also create the risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not a party to such adjudications and would substantially impair or impede the ability of such non-party Class members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

**COUNT I**

**Negligence Against All Defendants**

34. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

35. At all times relevant herein, Defendants had a duty to exercise reasonable care in the design, manufacture, labeling, testing, distributing, advertising, marketing, promoting,

warning and/or sale of the Composix Kugel Mesh Patches into the stream of commerce, including a duty to ensure that the product did not cause users to suffer from reasonably foreseeable, dangerous side effects and serious health problems.

36. Defendants failed to exercise ordinary care in the design, manufacture, labeling, testing, distributing, advertising, marketing, promoting, warning and/or sale of the Composix Kugel Mesh Patch into the interstate commerce, and Defendants knew or should have known that the product created a high risk of unreasonable and foreseeable dangerous side effects, some of which are fatal.

37. Defendants breached their duty to Plaintiff and the Class in one or more of the following respects, to-wit:

a. In the designing, manufacturing, labeling, testing, advertising, marketing, promoting, distributing, warning and/or sale of the Composix Kugel Mesh Patch in that it failed to use ordinary care so as to avoid causing serious side effects and risks to individuals receiving the product;

b. In failing to follow U.S. Food & Drug Administration ("FDA") good manufacturing practice by failing to properly investigate manifestations of the Composix Kugel Mesh Patch over the years 2001 to 2006, by failing to adequately document reports of this fact, and by failing to exercise adequate quality control;

c. In failing in their duty to disclose or warn that adequate testing had not been performed which would have shown that use of the Composix Kugel Mesh Patch posed serious potential side effects and failing to fully and accurately warn of the symptoms, scope or severity of the side effects and medical conditions caused by and associated with the Composix Kugel Mesh Patch;

d. In failing to disclose or warn of increased risk of injury from the use of the Composix Kugel Mesh Patch;

e. In failing to use qualified scientists or medical personnel in the design, manufacture, label, packaging, advertising, marketing, promoting, distributing, warning and/or sale of the Composix Kugel Mesh Patch;

f. In failing to adequately, properly and timely test and inspect the Composix Kugel Mesh Patch to determine whether it was safe and effective;

g. In failing to report the true results of testing for safety and efficacy performed on the Composix Kugel Mesh Patch and refusing to withdraw the product from the U.S. market in a timely fashion in light of the data information from tests, studies, adverse event reports concerning or relating to the product;

h. In failing to ensure that the Composix Kugel Mesh Patch was adequate or sufficient to maintain its integrity during normal use after implementation in the consumer/patient and failing to ensure that the product would perform as safely as an ordinary consumer/patient would expect.

38. Defendants knew or should have known that significant bodily injury was substantially likely to occur as a result of the defective and unreasonably dangerous design and manufacture of the Composix Kugel Mesh Patch products described above.

39. As a direct and proximate result of Defendants' above-described wrongful conduct and negligence, Plaintiff and the Class have been exposed to an unreasonably hazardous product and, as a result, they suffer significantly increased risks of contracting a serious injury. Such an injury is reasonably certain to occur and, as a result, Plaintiff and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh

Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial. These increased risks to Plaintiff and the Class make periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist that make the early detection and treatment of such injuries possible and beneficial.

40. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court a supervised medical monitoring program, punitive damages, attorneys' fees, and costs of suit.

41. The conduct of Defendants as described above in continuing to market, promote, sell and distribute the Composix Kugel Mesh Patch after obtaining actual knowledge that the hernia surgical repair products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional punitive damages in such sum as would serve to punish Defendants and to deter Defendants and others from like conduct.

42. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

## COUNT II

### Strict Liability: Product Defect Against All Defendants

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

44. At all times relevant herein, Defendants designed, manufactured, labeled, packaged, advertised, marketed, distributed and/or sold the Composix Kugel Mesh Patch to distributors, physicians, hospitals and medical practitioners throughout the United States, including the State of Missouri.

45. At all times relevant herein, Defendants intended for their Composix Kugel Mesh Patch to be surgically implanted into members of the general public, including Plaintiff and the Class, and knew or should have known that the product would be surgically implanted into members of the general public, including Plaintiff and the Class.

46. The implantation of the Composix Kugel Mesh Patch into Plaintiff and the Class was reasonably foreseeable and was used in the manner for which it was intended by all Defendants.

47. At all relevant times hereto,

a. Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised or distributed the Composix Kugel Mesh Patch in the course of its regular business;

b. The Composix Kugel Mesh Patch was used by Plaintiff and the Class in a manner reasonably anticipated and foreseeable and in the manner for which it was intended; and

c. The Composix Kugel Mesh Patch was in the same, or substantially the same, defective and unreasonably dangerous condition when put to their reasonably anticipated and foreseeable use.

48. The Composix Kugel Mesh Patch was defective and unreasonably dangerous when put to a reasonably anticipated and foreseeable use in that:

a. The memory recoil ring of the Composix Kugel Mesh Patch is likely to malfunction after being implemented;

b. The Composix Kugel Mesh Patch was not properly manufactured;

c. The Composix Kugel Mesh Patch was defectively designed;

d. The Composix Kugel Mesh Patch did not perform as safely as an ordinary consumer/patient would expect;

e. The Composix Kugel Mesh Patch was inadequate or insufficient to maintain its integrity during normal use after implementation in the consumer/patient;

f. Defendants failed to properly and adequately warn of (a) through (e) above; and

g. Such further and additional defects as discovery and the evidence reveal.

49. The aforementioned defects, dangerous conditions and lack of warnings existed when the Composix Kugel Mesh Patch was designed, manufactured, labeled, packaged, advertised, marketed, distributed and/or sold by Defendants. At the time Plaintiff and the Class underwent implantation of the product, it was being used in a manner reasonably anticipated and was in the same condition as when designed, manufactured, labeled, packaged, advertised, marketed, distributed and/or sold by Defendants.

50. As a direct and proximate result of Defendants' above-described wrongful conduct and negligence, Plaintiff and the Class have been exposed to an unreasonably hazardous product and, as a result, they suffer significantly increased risks of contracting a serious injury. Such an injury is reasonably certain to occur and, as a result, Plaintiff and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at

trial. These increased risks to Plaintiff and the Class make periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist that make the early detection and treatment of such injuries possible and beneficial.

51. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court a supervised medical monitoring program, punitive damages, attorneys' fees, and costs of suit.

52. The conduct of Defendants as described above in continuing to market, promote, sell and distribute the Composix Kugel Mesh Patch after obtaining actual knowledge that the hernia surgical repair products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional punitive damages in such sum as would serve to punish Defendants and to deter Defendants and others from like conduct.

53. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

**COUNT III**

**Strict Liability: Failure to Warn Against All Defendants**

54. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

55. At all times relevant herein, Defendants designed, manufactured, labeled, packaged, advertised, marketed, distributed and/or sold the Composix Kugel Mesh Patch to

distributors, physicians, hospitals and medical practitioners throughout the United States, including the State of Missouri.

56. At all times relevant herein, Defendants intended for the Composix Kugel Mesh Patch to be surgically implanted into members of the general public, including Plaintiff and the Class, and knew or should have known that the product would be surgically implanted into members of the general public, including Plaintiff and the Class.

57. Placement of the Composix Kugel Mesh Patch into Plaintiff and the Class was reasonably foreseeable and was used in the manner for which it was intended by all Defendants.

58. At all relevant times hereto,

a. Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised or distributed the Composix Kugel Mesh Patch in the course of its regular business;

b. The Composix Kugel Mesh Patch was used by Plaintiff and the Class in a manner reasonably anticipated and foreseeable and in the manner for which it was intended;

c. The Composix Kugel Mesh Patch was in the same, or substantially the same, defective and unreasonably dangerous condition when put to their reasonably anticipated and foreseeable use; and

d. The Composix Kugel Mesh Patch lacked adequate warnings of its defective and unreasonably dangerous condition.

59. The Composix Kugel Mesh Patch was defective and unreasonably dangerous when put to a reasonably anticipated and foreseeable use in that:

a. The memory recoil ring of the Composix Kugel Mesh Patch is likely to malfunction after being implemented;

b. The Composix Kugel Mesh Patch was not properly manufactured;

c. The Composix Kugel Mesh Patch was defectively designed;

d. The Composix Kugel Mesh Patch did not perform as safely as an ordinary consumer/patient would expect;

e. The Composix Kugel Mesh Patch was inadequate or insufficient to maintain its integrity during normal use after implementation in the consumer/patient;

f. Defendants failed to warn properly and adequately of a. through e. above;

g. Such further and additional defects as discovery and the evidence reveal.

60. Defendants did not give adequate warnings of the aforementioned dangerous conditions and defective nature of the Composix Kugel Mesh Patch when it knew or should have known of its dangerous and defective nature.

61. The aforementioned defects, dangerous conditions and lack of warnings existed when the Composix Kugel Mesh Patch was marketed, promoted, distributed and/or sold by defendants.

62. At the time of surgical implantation of the Composix Kugel Mesh Patch into Plaintiff and the Class, the product was being used in a manner reasonably anticipated and was in the same condition as when marketed, promoted, distributed and/or sold by defendants.

63. As a direct and proximate result of Defendants' above-described wrongful conduct and negligence, Plaintiff and the Class have been exposed to an unreasonably hazardous product and, as a result, they suffer significantly increased risks of contracting a serious injury. Such an injury is reasonably certain to occur and, as a result, Plaintiff and the Class have

incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial. These increased risks to Plaintiff and the Class make periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist that make the early detection and treatment of such injuries possible and beneficial.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court a supervised medical monitoring program, punitive damages, attorneys' fees, and costs of suit.

65. The conduct of Defendants as described above in continuing to market, promote, sell and distribute the Composix Kugel Mesh Patch after obtaining actual knowledge that the hernia surgical repair products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional punitive damages in such sum as would serve to punish Defendants and to deter Defendants and others from like conduct.

66. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

**COUNT IV**

**Breach of Express Warranty against All Defendants**

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

68. The aforementioned manufacturing, design, labeling, testing, distributing, advertising, marketing, promoting and selling of the aforesaid products were expressly warranted to be safe for use by Plaintiff, the Class and other members of the general public.

69. At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid products were to be used and warranted the same to be, in all respects, fit, safe and effective and proper for such purpose. The aforesaid products were unaccompanied by warnings of their dangerous propensities that were either known or knowable at the time of distribution.

70. Plaintiff and the Class and/or their health care providers reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid products. The warranty and representations were untrue in that the products caused severe injuries to Plaintiff and the Class and were unsafe and, therefore, unsuited for the use for which they were intended.

71. As a direct and proximate result of Defendants' above-described wrongful conduct and negligence, Plaintiff and the Class have been exposed to an unreasonably hazardous product and, as a result, they suffer significantly increased risks of contracting a serious injury. Such an injury is reasonably certain to occur and, as a result, Plaintiff and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial. These increased risks to Plaintiff and the Class make periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist that make the early detection and treatment of such injuries possible and beneficial.

72. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court a supervised medical monitoring program, punitive damages, attorneys' fees, and costs of suit.

73. The conduct of Defendants as described above in continuing to market, promote, sell and distribute the Composix Kugel Mesh Patches after obtaining actual knowledge that the hernia surgical repair products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional punitive damages in such sum as would serve to punish Defendants and to deter Defendants and others from like conduct.

74. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

**COUNT V**

**Breach of Implied Warranty against All Defendants**

75. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

76. Defendants sold the Composix Kugel Mesh Patch hernia surgical repair products which were implanted into Plaintiff's abdomen and the abdomens of the Class, and prior to their implantation, Defendants impliedly warranted to Plaintiff and the Class, and to their physicians and health care providers, that the products were of merchantable quality and safe for the use for which they were intended.

77. At the time of the sale of the Composix Kugel Mesh Patch hernia surgical repair products, Defendants knew, or should have known, that they were intended to be used for the purpose of surgically inserting them into the body to repair hernias.

78. Plaintiff and the Class and/or their health care providers reasonably relied on Defendants' judgment, statements and indications that the Composix Kugel Mesh Patch was fit for such use.

79. When the Composix Kugel Mesh Patch was distributed and sold by Defendants, it was unsafe for their intended use, and not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and implanted into the patient's body and would cause serious injuries to the user.

80. As a direct and proximate result of Defendants' above-described wrongful conduct and negligence, Plaintiff and the Class have been exposed to an unreasonably hazardous product and, as a result, they suffer significantly increased risks of contracting a serious injury. Such an injury is reasonably certain to occur and, as a result, Plaintiff and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial. These increased risks to Plaintiff and the Class make periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist that make the early detection and treatment of such injuries possible and beneficial.

81. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court a supervised medical monitoring program, punitive damages, attorneys' fees, and costs of suit.

82. The conduct of Defendants as described above in continuing to market, promote, sell and distribute the Composix Kugel Mesh Patches after obtaining actual knowledge that the hernia surgical repair products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional punitive damages in such sum as would serve to punish Defendants and to deter Defendants and others from like conduct.

83. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

**COUNT VI**

**Violation of the Missouri Merchandising Practices Act**

84. Plaintiff realleges and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

85. At all times relevant, Defendants were engaged in the design, manufacturing, assembling, distributing, conveying and/or selling of the all Composix Kugel Mesh Patch in their ordinary course of business. Defendants designed, manufactured, assembled and sold the devices to hospitals and physicians, knowing that they would be thereby sold to patients who needed hernia repair surgery, including Plaintiffs and all other members of the Class.

86. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of the Composix Kugel Mesh Patch.

87. Defendants omitted, suppressed, and/or concealed material facts concerning the dangers and risks associated with the use of the Composix Kugel Mesh Patch. Further, Defendants purposely downplayed and/or understated the serious nature of the risks associated with Composix Kugel Mesh Patch use in order to increase the sales of the product.

88. Plaintiff and the Class are consumers of the defective product and were injured by Defendants' deceptive and unfair acts.

89. Had Defendants not engaged in the deceptive conduct described above, Plaintiffs and the Class would not have purchased and/or paid for the Composix Kugel Mesh Patch, would not have incurred related medical costs and would not continue to incur these costs.

90. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff and the Class for the Composix Kugel Mesh Patch and/or for the costs of replacing the Composix Kugel Mesh Patch that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

91. Defendants engaged in calculated silence despite their knowledge of the growing public acceptance of misinformation and misrepresentation regarding both the safety and efficacy of the use of Composix Kugel Mesh Patch, and did so because the prospect of significant future profits outweighed their concern regarding health and safety issues, all to the significant detriment of the public, Plaintiff and the Class.

92. Defendants had a clear post-manufacturing duty to warn, which arose when they knew, or with reasonable care should have known, that the Composix Kugel Mesh Patch was fatal or injurious.

93. Plaintiff and the Class were injured by the cumulative and indivisible nature of Defendants' conduct. The purpose of that conduct, directed at patients, physicians and

consumers, was to create demand for and sell the Composix Kugel Mesh Patch. Each aspect of Defendants' conduct combined to artificially create sales of the Composix Kugel Mesh Patch.

94. Defendants' actions and representations set forth herein constitute knowing omission, suppression and/or concealment of material facts, made with the intent that others would rely upon such concealment, suppression and/or omission, in connection with the marketing of the Composix Kugel Mesh Patch in violation of the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

95. As a direct and proximate result of Defendants' above-described wrongful conduct and negligence, Plaintiff and the Class have been exposed to an unreasonably hazardous product and, as a result, they suffer significantly increased risks of contracting a serious injury. Such an injury is reasonably certain to occur and, as a result, Plaintiff and the Class have incurred and will likely continue to incur medical costs relating to the Composix Kugel Mesh Patch, including medical monitoring and/or other hospital costs, in an amount to be proven at trial. These increased risks to Plaintiff and the Class make periodic diagnostic medical examinations reasonably necessary. Monitoring and testing procedures exist that make the early detection and treatment of such injuries possible and beneficial.

96. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to injunctive relief in the form of a court a supervised medical monitoring program, punitive damages, attorneys' fees, and costs of suit.

97. The conduct of Defendants as described above in continuing to market, promote, sell and distribute the Composix Kugel Mesh Patches after obtaining actual knowledge that the hernia surgical repair products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an

award of additional punitive damages in such sum as would serve to punish Defendants and to deter Defendants and others from like conduct.

98. Medical monitoring is medically reasonable and necessary in order to provide for the early detection and prevention of irreparable harm, severe and debilitating injuries and death. In the absence of such relief, Plaintiff and the members of the Class might not receive prompt medical care that could prolong their productive lives, increase prospects for improvement and to minimize disability.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants as follows:

1. For an Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Rule 23, and appointing Plaintiff and her counsel to represent the Class;

2. For an award to Plaintiff and the Class in an amount sufficient to cover the costs of periodic medical examinations, which are reasonably necessary to detect and enable early treatment of injuries caused by the Composix Kugel Mesh Patch;

3. For punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing;

4. For all applicable statutory damages under the consumer protection legislation;

5. For an award of attorneys' fees and costs;

6. For prejudgment interest and the costs of suit; and

7. For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff on behalf of herself and all others similarly situated, hereby demands a trial by jury in this case.

Respectfully submitted,

/s/ Jeffrey M. Kuntz


| | |
|---|---|
| Thomas P. Cartmell | MO #45366 |
| Jeffrey M. Kuntz | MO #52371 |
| Thomas J. Preuss | MO #54923 |

Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, Missouri 64112
(816) 701-1100
(816) 531-2372 facsimile


/s/ Derek Potts


| | |
|---|---|
| Derek Potts | MO #44882 |
| Timothy Sifers | MO #49386 |

The Potts Law Firm
715 May Street, Suite 100
Kansas City, Missouri 64105
(816) 931-2230
(816) 931-7030


ATTORNEYS FOR PLAINTIFF
WALLIS KANE AND THE CLASS